# United States Court of Appeals

*for the*

# Third Circuit

Case No. 14-1590

GIVAUDAN FRAGRANCES CORPORATION,

*Plaintiff-Appellant,*

– v. –

JAMES KRIVDA and MANE USA, INC.,

*Defendants-Appellees.*

ON APPEAL FROM A FINAL JUDGMENT OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY, TRENTON AT NO. 3:08-CV-04409
THE HONORABLE PETER G. SHERIDAN, U.S.D.J.

## REPLY BRIEF ON BEHALF OF PLAINTIFF-APPELLANT GIVAUDAN FRAGRANCES CORPORATION

ERIC J. MAGNUSON
ROBINS KAPLAN LLP
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, Minnesota 55402
(612) 349-8500

– and –

DAVID LEICHTMAN
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, New York 10022
(212) 980-7400

ELLIOT H. SCHERKER
GREENBERG TRAURIG, P.A.
Wells Fargo Center, Suite 4400
333 Southeast Second Avenue
Miami, Florida 33131
(305) 579-0500

– and –

WENDY JOHNSON LARIO
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900

*Attorneys for Plaintiff-Appellant Givaudan Fragrances Corporation*

# TABLE OF CONTENTS

Page

ARGUMENT ....................................................................................................1

I.   THE DISTRICT COURT IMPROPERLY GRANTED
     SUMMARY JUDGMENT...............................................................2

     A.   Appellees Inaccurately Portray the Discovery Issues
          Below ...................................................................................2

          1.   Givaudan's discovery was not complete; Mane, not
               Givaudan, was the subject of motions to compel
               discovery ...........................................................3

          2.   Givaudan was never sanctioned for discovery ..................3

          3.   Givaudan provided full information concerning its
               formulas ............................................................4

     B.   The District Court Erred In Granting Summary Judgment
          To Mane .............................................................................4

          1.   Givaudan satisfied New Jersey law ..................................4

          2.   Appellees' authorities are distinguishable.........................5

          3.   The district court's grant of summary judgment was
               error...................................................................7

     C.   The District Court Compounded Its Error When It Granted
          De Facto Summary Judgment to Krivda .....................................9

          1.   Krivda's notice of the trade secrets at issue. .....................9

          2.   Granting Krivda's motion in limine granted him
               summary judgment .............................................9

     D.   The Summary Judgment Error Permeated the Trial
          Proceedings ......................................................................10

          1.   Givaudan was prevented from presenting its strong
               circumstantial case.............................................11

          2.   Dr. Nilsen's testimony ..................................................12

II.    The Court Committed Additional Prejudicial Error When it Refused to Admit the Print List and Allowed Krivda to Testify as an Expert ......................................................................15

    A.    The Exclusion of the Print List Was Erroneous and Highly Prejudicial ..................................................................15

        1.    Givaudan was entitled to introduce the print list as a business record...................................................15

        2.    Exclusion of the print list prevented effective cross-examination of Krivda ......................................17

        3.    Givaudan could not use the print list to challenge the explanation of Krivda's high level of productivity upon joining Mane .......................................18

        4.    Prejudice ..........................................................19

    B.    Krivda as an Expert ...................................................20

III.    THE REFUSAL OF THE DISTRICT COURT TO INSTRUCT THE JURY ON ALL OF GIVAUDAN'S CLAIMS DEPRIVED GIVAUDAN OF A FAIR TRIAL. .................................22

IV.    APPELLEES CANNOT SAVE THEIR JUDGMENT BY ADVANCING ALTERNATIVE ARGUMENTS THAT WERE EITHER REJECTED BY THE DISTRICT COURT OR NEVER RULED UPON. ...................................................24

    A.    Appellees' attacks on the district court's *Daubert* ruling regarding Dr. Nilsen are baseless...................................24

    B.    Mane's attack on Gering's testimony is another example of Appellees' appellate strategy to focus on extraneous facts, and not the issues on appeal ...............................25

    C.    Trade secret status has not been waived ....................26

CONCLUSION .....................................................................27

# TABLE OF AUTHORITIES

**Page**

## Cases

*Avaya Inc. v. Cisco Sys.*,
   No. 10-5881, 2011 U.S. Dist. LEXIS 119896
   (D.N.J. Oct. 17, 2011).........................................................................5

*Barker v. Deere & Co.*,
   60 F.3d 158 (3d Cir. 1995) ...............................................................20

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)............................................................... 20, 24, 25

*DeRubeis v. Witten Techs., Inc.*,
   244 F.R.D. 676 (N.D. Ga. 2007) .........................................................7

*Durkin v. Wabash Nat'l*,
   No. 10-2013, 2013 U.S. Dist. LEXIS 44467
   (D.N.J. Mar. 28, 2013)......................................................................25

*Emerson Radio Corp. v. Orion Sales, Inc.*,
   No. 95-6455, 2000 U.S. Dist. LEXIS 487 (D.N.J. Jan. 10, 2000) ....................23

*Esquire Deposition Servs., LLC v. Boutot*,
   No. 09-1526, 2009 U.S. Dist. LEXIS 52207 (D.N.J. 2009)................................5

*Glass v. Philadelphia Elec. Co.*,
   34 F.3d 188 (3d Cir. 1994) ...............................................................20

*Grow Co., Inc. v. Chokshi*,
   No. BER-C-280-05, 2005 WL 2483706
   (N.J. Super. Ct. Ch. Div. Oct. 7, 2005)...............................................6

*Hill v. Best Med. Int'l, Inc.*,
   Nos. 07-1709, 08-1404, 09-1194, 2011 U.S. Dist. LEXIS 123845
   (W.D. Pa. Oct. 24, 2011) ...................................................................7

*IDX Sys. Corp. v. Epic Sys. Corp.*,
   285 F.3d 581 (7th Cir. 2002) .............................................................6

*Johnson v. Manitowoc Boom Trucks, Inc.*,
    484 F.3d 426 (6th Cir. 2007) ................................................................24

*Kendall Holdings, Ltd. v. Eden Cryogenics LLC*,
    No. 2:08-cv-390, 2013 U.S. Dist. LEXIS 136898
    (S.D. Ohio Sept. 24, 2013)....................................................................24

*Lamorte Burns & Co., Inc. v. Walters*,
    770 A.2d 1158 (N.J. 2001) ............................................................. 22, 23

*MAI Sys. Corp. v. Peak Computer*,
    991 F.2d 511 (9th Cir. 1993) ..................................................................6

*McGonigal v. Sears Roebuck & Co.*,
    No. 07-CV-4115, 2009 U.S. Dist. LEXIS 20656
    (E.D. Pa. Mar. 13, 2009)........................................................................25

*Newark Morning Ledger Co. v. New Jersey Sports & Exposition Authority*,
    31 A.3d 623 (N.J. Ct. App. Div. 2011)..................................................26

*Nova Chem., Inc v. Sekisui Plastics Co., Ltd.*,
    579 F.3d 319 (3rd Cir. 2009) ................................................................26

*Oddi v. Ford Motor Co.*,
    234 F.3d 136 (3d Cir. 2000) ..................................................................25

*Rohm & Haas Co. v. Adco Chem. Co.*,
    689 F.2d 424 (3rd Cir. 1982) ..................................................................5

*Rycoline Products, Inc. v. Walsh*,
    756 A.2d 1047 (N.J. Super. Ct. App. Div. 2000) ...................................8

*Saltiel v. GSI Consultants, Inc.*,
    788 A.2d 268 (N.J. 2002) ......................................................................22

*SEC v. Stanford Int'l Bank, Ltd.*,
    776 F. Supp. 2d 323 (N.D. Tex. 2011) ..................................................16

*sit-up Ltd. v. IAC/Interactive Corp.*,
    No. 05-9292-DN89, 2008 U.S. Dist. LEXIS
    12017 (S.D.N.Y. Feb. 20, 2008)........................................................5, 6

*United States v. Mitchell*,
   365 F.3d 215 (3d Cir. 2004) ...............................................................24

## Statutes

Schweizerisches Strafgesetzbuch [StGB] [Criminal Code]
   Dec. 21, 1937, SR 311.0, art. 40, 271 (Switz.)...................................16

## ARGUMENT

James Krivda admitted printing more than 600 formulas as he was leaving Givaudan to join Mane.  He admitted preparing a handwritten list of the most important formulas and taking that list to Mane.  He knew exactly what information he had, and what Givaudan claimed were trade secrets.  Givaudan provided Mane with the same list of formulas, and detailed information concerning their ingredients.

While Appellees' briefs try to obscure these undisputed facts, in the end, they cannot deny them, and the legal arguments they raise cannot save the judgment in their favor.  The district court erred in granting partial summary judgment that amputated Givaudan's claims, and in refusing to allow the jury to consider the full scope of the evidence of Krivda's conduct.  Those errors require a new trial. Using the erroneous rulings of the district court, the Appellees repeatedly stalled Givaudan's presentation during trial.  The combined effect of the pretrial ruling limiting Givaudan to presenting evidence relating only to the 34 formulas that "matched," and the exclusion of the print list, forced Givaudan to try the case with handcuffs and leg irons.  The disadvantage to which Givaudan was placed simply could not be overcome.

If any doubt remains as to the need for a new trial, the Court need only look to the additional prejudice that resulted from two other rulings by the trial court: its error in allowing Krivda improperly to testify as an expert, giving opinions on the ultimate issues in the case under the guise of relating his "experience," and its refusal to instruct the jury on all of Givaudan's claims.

## I.  THE  DISTRICT  COURT  IMPROPERLY  GRANTED SUMMARY JUDGMENT

### A.  Appellees Inaccurately Portray the Discovery Issues Below

From the inception of the litigation, Givaudan tried to obtain from Mane information about Mane's fragrance formulas so that it could try to determine how the information that Krivda accessed and printed was used.  Mane fought that effort at every step.  Its fitful production, the breaches of its claimed quarantine, changes in formula names, and other actions explain, in part, why it was so difficult for Givaudan to match its formula information to Mane's formulas.  (*See* Appellant's Opening Brief (App. Br.) 10).

Having prevailed in a jury trial, Appellees argue that the record must be viewed in a light most favorable to the verdict. (Mane Br. 3; Krivda Br. 55). While that might be true with regard to the evidence that formed the basis for the jury's verdict, as to the pre-trial rulings of the district court and its decisions regarding the scope of evidence that Givaudan could present to the jury, all parties must fairly and accurately state the proceedings, without embellishment or distortion. Appellees do not honor that obligation.

First, Appellees misstate the discovery record below. Second, they focus their recitation on only those portions of the record that support their claims, largely ignoring the impact of the district court's erroneous evidentiary rulings on Givaudan's case.  This strategic misdirection cannot obscure the prejudice of the district court's actions.

1.    **Givaudan's discovery was not complete; Mane, not Givaudan, was the subject of motions to compel discovery**

Givaudan's opening brief detailed the obstacles it faced in trying to obtain discovery from Mane.  (*See* App. Br. 11-14). Mane consistently resisted discovery, and when it did provide information, that information was either altered (App. Br. 10, n.6) or in a form nearly impossible for Givaudan to use.  (*Compare, e.g.,* JA7071 and 7185).

Mane asserts that the district court's partial summary judgment was filed at the end of discovery. (Mane Br. 50).  Not true - Givaudan had discovery sanctions motions pending against Mane at the time of the decision (JA2034-35, JA2557-58); in fact, the district court expressed surprise regarding the outstanding discovery issues. (JA10756). Not only were Givaudan's motions pending before summary judgment, Givaudan also provided a Rule 56(d) declaration (JA8774-80) which was ignored by the district court.  The magistrate only denied Givaudan's discovery motions after the summary judgment ruling in light of the narrower scope of the case following the order.  (JA4106-08, JA4112-26).

2.    **Givaudan was never sanctioned for discovery**

Mane claims wrongly and repeatedly that the Court "sanctioned" Givaudan for violation of its disclosure obligations. (Mane Br. 6, 10 n.6, 50).  Mane cites R183 (JA1218).  However, that is an order granting in part and denying in part Appellees' *Motions in Limine* (JA962-63 & JA1007-08) at the preliminary injunction stage of the case.  The order simply narrowed the number of formulas to be presented at the preliminary injunction hearing.  Before the hearing, Givaudan

3

had made 15 formula matches; after the deadline for submission, Givaudan provided 13 additional matches, but the court ruled that those would not be considered at the hearing. Givaudan was never "sanctioned" – as Mane later admits in its brief: "The Court could have, but did not, grant dispositive sanctions . . ." (Mane Br. 32). The district court did not affirm any sanction (Mane Br. 11) – it summarily affirmed the magistrate's ruling on the *in limine* motions. (JA1226-27). And the district court could not have properly granted summary judgment as a sanction based on the procedural and factual record here.  (App. Br. 32-34).

### 3.    Givaudan provided full information concerning its formulas

Mane was able to convince the district court that it was denied a "meaningful opportunity" to inspect the detailed formula information. (JA12). However, every Givaudan formula Krivda printed was produced on a computer database; the magistrate actually criticized *Mane* for its unilateral refusal to review the database that Givaudan had made available.  (JA2019; App. Br. 12, 15, 34). Appellees spurned the opportunity to review the full and complete formulas that Givaudan made available until well after the summary judgment briefing was complete. (App. Br. 14).

### B.    The District Court Erred In Granting Summary Judgment To Mane

### 1.    Givaudan satisfied New Jersey law

Under New Jersey law, plaintiffs are only required to identify a trade secret with enough particularity to show that it is a secret of a particular employer and not

a matter of general knowledge in the industry. (App. Br. 31, *citing among other authorities Rohm & Haas Co. v. Adco Chem. Co*., 689 F.2d 424, 432 & n.8 (3rd Cir. 1982) (criticizing district court for finding that plaintiff failed to adequately define the alleged trade secret, because New Jersey law does not mandate a minimum level of definition); *see also Esquire Deposition Servs., LLC v. Boutot*, No. 09-1526, 2009 U.S. Dist. LEXIS 52207, *30 (D.N.J. 2009) ("Plaintiff has sufficient evidence for this Court to find in its favor on its claim for misappropriation of trade secrets," where plaintiff presented evidence of 600 files on the defendant's thumb drive regarding "customer lists, pricing information, and other proprietary information").)

## 2.    Appellees' authorities are distinguishable

Appellees rely on decisions where a trade secret plaintiff made only general, conclusory statements identifying the alleged trade secrets – not the facts of this case. *See sit-up Ltd. v. IAC/Interactive Corp.,* No. 05-9292-DN89, 2008 U.S. Dist. LEXIS 12017, *15, 19, 34-35 (S.D.N.Y. Feb. 20, 2008) (plaintiff's 28-page narrative alleging over 100 separate trade secrets, and response to interrogatory that its trade secrets were "strewn across 13,000 pages produced in discovery" was too vague and indefinite to identify trade secrets at issue); *Avaya Inc. v. Cisco Sys.,* No. 10-5881, 2011 U.S. Dist. LEXIS 119896, *6-7 (D.N.J. Oct. 17, 2011) (plaintiff set forth a list of alleged trade secrets without any indication as to why or if items were actually trade secrets; court denied plaintiff's motion to compel, requiring

plaintiff produce list of the trade secrets it asserted were actually misappropriated, "a direction which is consistent with case law in this jurisdiction."); *Grow Co., Inc. v. Chokshi,* No. BER-C-280-05, 2005 WL 2483706, *6 (N.J. Super. Ct. Ch. Div. Oct. 7, 2005) (finding that plaintiff's assertion that its trade secrets were its "unique" manufacturing processes failed to adequately describe the trade secrets at issue), aff'd, 2006 WL 551367 (N.J. Super. Ct. Ch. Div. Mar. 3, 2006); *IDX Sys. Corp. v. Epic Sys. Corp.,* 285 F.3d 581, 583 (7th Cir. 2002) (plaintiff's description of methods and processes underlying and inter-relationships among various features making up its software package "too vague and too inclusive," effectively asserting all information in or about its software was trade secret); *MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 522 (9th Cir. 1993) (trade secrets were not specifically identified where plaintiff described trade secrets as "diagnostic software and operating system.")   In stark contrast, Givaudan not only provided Appellees with an exact list of what trade secrets were at issue, and information on how they were stolen, but it also provided a complete database containing the details of the stolen formulas.

Nor are Appellees' citations persuasive to cases requiring specific identification of trade secrets *before* discovery commences, or where a plaintiff fails to respond to discovery orders compelling identification. *See sit-up Ltd.*, 2008 U.S. Dist. LEXIS 12017 at *13-26, 31-35 (granting summary judgment because plaintiff failed to comply with order to produce "detailed specific list of each trade secret … and the methodology through which it was communicated to the defendants."); *Hill v. Best Med. Int'l, Inc.*, Nos. 07-1709, 08-1404, 09-1194, 2011

U.S. Dist. LEXIS 123845, *24 n.9, 26-27 (W.D. Pa. Oct. 24, 2011) (following multiple court orders that plaintiff must identify its trade secrets with specificity, parties stipulated that approximately 100 lines of computer code identified by plaintiffs were only trade secrets at issue); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007) (granting motion to compel plaintiff to identify its trade secrets with particularity *prior* to discovery on the defendant's trade secrets "helps the court to determine the outer permissible bounds of discovery and prevents needless exposure of the defendant's trade secrets").

Givaudan's trade secrets (the full formulas) had been fully identified and provided on a computer when Mane filed for summary judgment. The parties had proceeded through extensive discovery, and never once did the court order Givaudan to describe its trade secrets with greater precision or particularity.

### 3. The district court's grant of summary judgment was error

By contrast, as described in Givaudan's opening brief (App. Br. 11, 14), Mane took every opportunity to avoid providing discovery of what it did with information that Krivda had when he arrived at Mane. Mane's stonewalling had the intended result – by the time of the summary judgment motion, Givaudan had only been able to identify 34 Mane formulas that it believed derived from Givaudan's formulas. Had the summary judgment not cut off Givaudan's matching efforts, more formulas would have been identified by the time of trial. But without regard to proof of matches, there is no question that Givaudan fully identified its claimed secrets.

7

Givaudan also identified as best it could those Mane formulas that it claimed were derived from the stolen secrets. The process of "matching" Givaudan and Mane formulas was inherently difficult, because each formula consists of numerous ingredients, some in minute quantities or proportions. (App. Br. 12). The matching issue was exacerbated by Mane's repeated refusal to provide formula information (*id. at* 12-13), its misconduct in allowing Krivda to change information regarding formulas and formula names during discovery (JA11491-93, 13107), and its production of formula information in a format that required conversion of ingredient measures in order to prepare a meaningful comparison to Givaudan formulas. (JA12543-44). Moreover, if Krivda started with a Givaudan formula that was subsequently modified in some way, that fact did not mean there was not misappropriation of the Givaudan formula – using the secret information as a starting point for a formula was still theft. (*See* discussion, *infra*, at 11, 14-15; App. Br. 40, *citing*, among other authorities, *Rycoline Products, Inc. v. Walsh*, 756 A.2d 1047, 1053 (N.J. Super. Ct. App. Div. 2000) ("The trial court's determination that ACFS 276 and SAFE 200+ are not identical is not dispositive of the issue as to whether there was misappropriation of a trade secret.")).

But matching went only to the *use* of the secret information. By focusing on "matches" at the summary judgment stage, the district court clearly got it wrong. The relevant inquiry was to identify what secret information Givaudan claimed was taken. For that inquiry, there was absolutely no need to show exact, or even approximate, matches to information used by Mane.

### C.      The District Court Compounded Its Error When It Granted *De Facto* Summary Judgment to Krivda

Only Mane moved for summary judgment on the identification issue. Krivda clearly could not credibly do so, since he had actual knowledge of the specific formulas at issue.  The district court erroneously extended the summary judgment ruling to Krivda, despite the fact that he never moved.  (App. Br. 18, 35-36).

### 1.      Krivda's notice of the trade secrets at issue.

Krivda knew which formulas he printed (as demonstrated in his declarations, deposition and trial testimony).  He discussed the print list in the pre-trial declaration that he submitted.  (JA7401).  Krivda's brief admits that Krivda "readily conceded to printing over 600 formulas." (Krivda Br. 17).

He also wrote the formulas down based on information taken from the Givaudan formula database, and then printed them in the same order, showing that he knew exactly what the formulas were. (JA7401-02).  The print list matches Krivda's handwritten list of created formulas.  (JA7401; JA13032-35).

### 2.      Granting Krivda's motion *in limine* granted him summary judgment

Prior to trial, the district court granted Krivda's motion *in limine* to give him the same benefit as Mane received from the partial summary judgment order. (App. Br. 18).  The fallacy of the court's analysis is that Krivda knew precisely what formulas he had accessed in the days before he left Givaudan; if he had ever asked the question "What trade secrets?", he already had the answer – "The 622 formulas that you printed as you were leaving to join your new employer."  There

can be no credible argument that, as to Krivda, the trade secrets were not adequately identified. Yet the district court limited the claims against Krivda to the same extent it limited them against Mane.

### D.     The Summary Judgment Error Permeated the Trial Proceedings

The district court's failure to distinguish between identification of Givaudan's stolen secrets and proof of which secrets Mane used had consequences far beyond limiting Givaudan's damages claim. Appellees successfully used the court's erroneous ruling to attack Givaudan's case at nearly every turn. Givaudan's presentation was torpedoed by Appellees' repeated objections that evidence Givaudan offered to show the full picture of Krivda's theft was "beyond the 34 formulas." But Krivda's theft was a separate issue from Mane's use of the stolen information.

Givaudan should have been able to present evidence concerning the hundreds of formulas that Krivda accessed in his final days at Givaudan. This would have provided the jury a full picture of the furious activity in which Krivda engaged when he joined Mane - entering detailed formula after detailed formula in short order, many highly similar to formulas included in the print list (JA12529-30). Instead, Givaudan was forced to try to build a ship in a bottle – presenting its case by implication while being forced to do so through the narrow gateway of the 34 formulas.

### 1.    Givaudan was prevented from presenting its strong circumstantial case

The district court's decision to limit Givaudan's proof prevented the jury from considering a wealth of circumstantial evidence. For example, the court refused to allow emails into evidence to show what formulas Krivda was entering into Mane's database, and when and what people at Mane were asking for, because this information did not relate to the 34 formulas. (App. Br. 38-40). That evidence would also have shown Krivda's use of similar, although not matched, formulas which may have been modified based on cost or customer requests. Even if not a precise match to a Givaudan formula, evidence of similar formulas was relevant to show that Krivda started with the Givaudan formula as the starting point for formulas that ultimately were not a match, but derived from the Givaudan formula. (App. Br. 40; *see also* pp.7-8, *supra*).

Like most trade secret plaintiffs, Givaudan had to try its case based on circumstantial evidence, not direct evidence. (App. Br. 16-17). For that very reason, it was critical for Givaudan to be able to present a full picture of the circumstances, so that it could make a compelling presentation to the jury.

But those efforts were battered by repeated reminders to the jury that although Givaudan had claimed 622 formulas were taken, its claims were limited to 34, and by the rulings of the court that prevented Givaudan from confronting Krivda with the print list and evidence that flowed from it. (*See, e.g.,* R654:10-14, 17; R655:383-84; App. Br. 18-20, 28-29). Givaudan tried to explain to the court the nature of the modifications in the formulas to expand the 34 and allow

11

evidence concerning them.  The court flatly rejected this effort.  (R657:679-688).
When Givaudan witnesses tried to explain, for example, how subtle variations may
be made in particular formulas, sometimes described as "derivatives," the court
sustained objections precluding evidence of these similar, but not identical
formulas, because they were "beyond the 34." (R657:687-88; R664:2191-92).  To
the extent that the court did not outright exclude evidence, its repeated limiting
instructions implied to the jury that the evidence was less than credible.  "Beyond
the 34" objections were sustained no matter how close the derivatives or other
formulas might be, or largely without regard to the purpose for which evidence
might be offered, such as actual notice, admission against interest, etc.

Appellees largely ignore or miscast the consequences of the trial court's
rulings, focusing on the record as if there were no error.  But when the impact of
the district court's erroneous rulings is properly considered, it is clear why the jury
did not find Givaudan's case persuasive.  Givaudan's presentation was severely
compromised by the district court's rulings and repeated admonitions and
criticisms based on the efforts of Givaudan's counsel to present the case despite the
restrictions the court imposed.  Givaudan was not permitted to present its case, and
is entitled to a new trial.

### 2.    Dr. Nilsen's testimony

Appellees spend a great deal of time castigating the testimony of Givaudan's
witness, Dr. Steven Nilsen.  They go so far as to argue that Dr. Nilsen gave false
testimony (Mane Br. 24), a claim not supported by the record.  They do not address

the impact on Dr. Nilsen's testimony of the district court's erroneous rulings regarding the scope of the evidence relating to formulas.

Matching Givaudan's formulas to those in the Mane database was exceedingly difficult. Mane produced thousands of formulas (JA11489), each with numerous ingredients; without a key to link Givaudan Formula "1" to Mane Formula "A," Givaudan was forced to examine formula after formula and to try to match them. In some ways, the effort was like having two 5,000-piece jigsaw puzzles on two separate tables, and trying to find 622 matching pieces, some of which had been altered. Like a jigsaw puzzle expert might do, Givaudan started by looking for pieces with similarities – straight edges, certain colors, etc. - or in the case of the formulas, similar descriptive names and primary ingredients. Identical ingredients are not always used to achieve the same or similar fragrances (JA11489); some ingredients are substituted because of availability issues or for other reasons, but can achieve the same effect.

Dr. Nilsen acknowledged that as he used the term "match" he was not necessarily saying that all of the ingredients were identical. (JA12636-37). He grouped together combinations of similar and equivalent ingredients, finding matches sometimes based on "synonym or equivalent ingredients." (*Id.*) He explained his overall approach to comparing formulas, and what he meant by "matches":

> [T]he best way to describe this is it's based on what else is in the formula and the other ingredients that are used. And when I made my assessments of equivalent ingredients, if you go through them one by one it's based on my training and expertise . . . I was trying to use

good words to describe my assessment, and that's what I came up
with.

(JA12606).  The point that Dr. Nilsen tried to get across was that he was looking
for the overall structure of a fragrance, even if the specific elements were not
identical.  (JA12696).  Dr. Nilsen explained "I am looking for an analogy: if you
steal my car and take the hubcaps off, it's still my car.  If you steal my formula and
take the ingredients out, I believe it's still the Givaudan formula here."  (JA12795).

Not only was the process of matching difficult, but Dr. Nilsen was never
allowed to fully explain his overall analysis that would have buttressed his specific
matches by showing a broader picture of similarity between the formulas that
Krivda accessed in his last days at Givaudan and those that he created at Mane. Dr.
Nilsen was restricted to discussing 34 formulas. And when he tried to put those
formulas in a broader context by showing derivatives and variations, the district
court cut off the testimony. (JA12530-31).

The evidence that Givaudan was not allowed to present would have painted
a starkly different picture for the jury had they seen it. The court allowed the
Appellees to isolate Dr. Nilsen's comparisons without a full context, and then aim
their broadsides at the limited universe of formulas about which he was allowed to
speak.

Dr. Nilsen's testimony was further undermined by the extent to which the
Appellees were allowed to call out changes in his opinions (Mane Br. 26; Krivda
Br. 4), while Dr. Nilsen was prevented from explaining the reasons for those

changes, as the district court ruled that Givaudan could not discuss Mane's discovery misconduct. (JA4654).

The court's ruling handcuffed Dr. Nilsen from providing testimony as to why he had to make adjustments in trying to compare Givaudan formulas to Mane formulas. He was also unable to deflect the impact of the cross-examination, when he could not show the broader context in which he was operating. The insistence of the district court that Dr. Nilsen's testimony must be limited to the 34 meant that the jury was never able to see the evidence of the broader picture of Krivda's use of the basic elements of Givaudan formulas to ultimately derive formulas for Mane.

## II.    The Court Committed Additional Prejudicial Error When it Refused to Admit the Print List and Allowed Krivda to Testify as an Expert

### A.    The Exclusion of the Print List Was Erroneous and Highly Prejudicial

#### 1.    Givaudan was entitled to introduce the print list as a business record

The district court ruled that the list of formulas that Krivda admittedly printed – prepared from Givaudan's business records – could not be presented to the jury. The foundation for the list came from those business records, not from any particular witness. (App. Br. 46). Any Givaudan employee familiar with the computer records of the company and how information regarding access to those records was stored and retrieved was competent to lay the foundation needed for the print list that showed Krivda's admitted actions as he was leaving. (App. Br.

46-48). But the district court rejected that foundation, excluding not only this key piece of evidence, but numerous references to the list contained in exhibits and proposed testimony of Givaudan witnesses.

The district court erroneously concluded that the only employee who could lay foundation for admission of the exhibit offered at trial was the employee who had actually printed out the data from Givaudan's computerized business records. When that witness was not available[1] the court refused to consider foundation offered by a different Givaudan employee who was equally familiar with the foundation for the report, and who was able to duplicate the report from the same business records. (App. Br. 44-45). The result was that the concrete and compelling evidence of Krivda's conduct in the days before his departure was not available to the jury.

Like the ruling concerning evidence "beyond the 34," the erroneous ruling concerning the admissibility of the print list had a dramatic impact on the trial of the case. Givaudan's proffered evidence – whether in the form of testimony from witnesses or documents – was met with repeated objections that the evidence would improperly put before the jury the content of the print list, resulting in

---

[1] Appellees are dismissive of the fear of criminal prosecution that Givaudan's employee in Switzerland had about providing testimony or a declaration under oath. (Mane Br. 21, 58-59; Krivda Br. 11, 25, 46). But under the Swiss discovery-blocking statute, it is a criminal offense to provide discovery in U.S. litigation. *See* Schweizerisches Strafgesetzbuch [StGB] [Criminal Code] Dec. 21, 1937, SR 311.0, art. 40, 271, 273 (Switz.); *SEC v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 333 (N.D. Tex. 2011) (noting Article 271 prohibits Swiss bankers from turning over documents for "production" for U.S. litigation because it is act of facilitation improper production abroad that constitutes Article 271 violation).

numerous redactions and limiting instructions to the jury, damaging the force of Givaudan's case.  (*See, e.g.,* R656:461; R656:505-09; R656:521-24; JA12498, 12851-56; R657:711-12).

### 2.    Exclusion of the print list prevented effective cross-examination of Krivda

The court's refusal to allow Givaudan to cross-examine Krivda based on the contents of the print list was also highly prejudicial.  Givaudan claimed that Krivda walked out with 622 formulas, and entered dozens of complete formulas immediately upon starting his new job.   Krivda adamantly denied taking any formulas with him, or that he used the information from the Givaudan formulas to create formulas at Mane.  This stark contrast in positions made the print list all the more crucial.   Admission of the print list would have provided the jury with specific evidence regarding the exact formulas that Krivda printed in the last days of his employment.   That information was significant in its own right, but also would have allowed Givaudan effectively to attack Krivda's credibility.   Givaudan was denied that powerful tool.

The court's exclusion of the print list made cross-examination extremely difficult. (*See, e.g.,* R664:2095) (court refuses to let Givaudan question Krivda based on print list).   When pressed for details about the Givaudan formulas he admitted printing just before joining Mane, Krivda testified that he could not remember formulas off the top of his head (R668:2894).   "[I]t's not like a spelling bee . . ."   (*Id.*).   Krivda repeatedly said that he was uncertain, and couldn't remember which formulas he printed, but the court would not allow Givaudan to

use the print list to refresh his recollection or for impeachment. (R664:2095; 2136-2137, JA12970, JA12971-72, JA12973-78, R665:2149-2150).  He was dismissive of the questions – "I don't even remember what I had for lunch yesterday" (R668:2894) – and without the print list, Givaudan's counsel could not challenge his claimed faulty memory.  For example, Givaudan's counsel was not allowed to question Krivda as to the fact his handwritten created formula list followed the print list in exactly the same order.   (JA12969-70). Also, Krivda would only concede he "may have" printed other Givaudan perfumers' formulas (JA12978), a fact the print list would have shown.

Givaudan was forced to try the case without evidence of a print list, and because of that, could not pin Krivda down.  With the print list, Givaudan could have shown exactly what Krivda printed in the days before he departed.  The print list also would have shown that the formulas that Krivda entered upon his arrival at Mane were highly similar to, if not identical in all material respects, to the formulas shown on the print list, including nearly identical names. Without the list, the jury was not able fully to assess that claim.

### 3.    Givaudan could not use the print list to challenge the explanation of Krivda's high level of productivity upon joining Mane

Givaudan was also hampered in its efforts to demonstrate the implausibility of Krivda's high level of productivity in his first weeks at Mane unless he was using the stolen formula information.  Mane's own evaluation of Krivda's work described his performance as "huge, fast and efficient." (JA6895).  Moreover,

Krivda was entering dozens of formulas without any Mane customer requests or "profiles." (JA7240, 12529-30). Many of these formulas were entered without any modification; Dr. Nilsen testified that he has never created a finished, stabilized formula on first try. (JA12532-33). If Krivda did not use formulas from Givaudan, then his performance was equivalent of writing a full musical score from scratch in one sitting. Yet the jury was unable to fully assess the incredible nature of that claim because it was not allowed to see the print list, and compare the formulas listed to the formulas that Krivda entered at Mane.

### 4.    Prejudice

The exclusion of the print list was highly prejudicial. Instead of proof that Krivda took 622 detailed formulas, and then used that information immediately to create scores of fully finished fragrance formulas for Mane, Givaudan was forced to rely on reconstructed proof of what formulas it had when Krivda left, and then compare those to Mane fragrances. Givaudan was limited to pointing out huge similarities between the formulas, down to minute percentages of ingredients. That evidence was powerful, but not nearly as powerful as if the jury had seen the printed list of formulas. And Givaudan could not use the list to challenge Krivda's self-serving statements and selective memory, or to present its case in broader context.

When it comes to the erroneous exclusion of evidence, the appealing party does not have to show that the excluded evidence surely would have altered the result of the trial. "In reviewing evidentiary rulings, if we find nonconstitutional error in a civil suit, such error is harmless only 'if it is highly probable that the

error did not affect the outcome of the case.'" *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994). As the Court explained in *Barker v. Deere & Co.*, 60 F.3d 158, 164-65 (3d Cir. 1995), a new trial is necessary if the appellate court concludes that an erroneous evidentiary ruling affected the jury's verdict. Judged against this standard, the district court's errors more than justify the relief of a new trial.

### B.    Krivda as an Expert

Allowing Krivda to replace the previously identified defense expert, who had been subject to full discovery and testing pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), is another reason the trial in this case was fatally flawed.

Mane identified Ken Kassegrande as its perfumery expert. Givaudan challenged his qualifications and opinions through a *Daubert* motion (R507, JA4941), so that by the time of trial, it was ready to confront his testimony. But instead of the expert witness for which it was prepared, Givaudan was suddenly faced with responding to expert testimony from Krivda, who opined on formula matches and reverse engineering, the use of gas chromatography (GC), and stated his opinion that formulas created by GC analysis were not trade secrets. (App. Br. 50-52). But there was no evidence that Krivda performed GC analysis for any of the 34 formulas. (JA13022).

In fact, GC analyses only suggest ingredients, and the formulas still need to be created. Formulas created using GC are protectable trade secrets. (JA11488-89; App. Br. 51, and n.20). Many of the Givaudan formulas that Krivda testified

could have been created using GC analysis were not available on the market, so there could be no samples upon which the GC analysis could be performed. (JA12828). However, Krivda was allowed to testify as an expert on the impact of GC analysis on the claims in this case.

Krivda also was allowed to testify, over objection, that none of the Mane formulas matched any of the Givaudan formulas (R667:2721-2804), something that he should not have been allowed to do as a lay witness. His was the only testimony to refute Dr. Nilsen's expert testimony; yet Krivda was allowed to give that testimony without any expert disclosure, all under the guise of being a fact witness.

Krivda was also the only witness who testified in support of Appellees' claims that Givaudan's formulas were not trade secrets. He was allowed to state that opinion over the two fold objection that his testimony was improper expert opinion (JA13022), and that it invaded the province of the jury. (JA13028).

The court's willingness to allow Krivda to testify over objection to matters never disclosed in an expert report is particularly incongruous when compared to the strict limitations that the court imposed on Givaudan's expert witnesses, whose testimony was strictly limited to the disclosures made in their written reports. (R659:1210-14; R655:385-86). No such limitation was imposed on Krivda.

### III. THE REFUSAL OF THE DISTRICT COURT TO INSTRUCT THE JURY ON ALL OF GIVAUDAN'S CLAIMS DEPRIVED GIVAUDAN OF A FAIR TRIAL.

Givaudan requested that the jury be instructed on, among other things, its claim that Krivda had breached his duty of loyalty. (JA4552). In part, the requested instruction read:

> The duty of good faith and loyalty creates an affirmative duty requiring an employee and/or officer to act in his or her employer's best interests at all time. An employee and/or officer may breach the duty of loyalty by divulging the trade secrets or confidential information of the past employer, Givaudan, to his or her current employer, Mane, even after the termination of the employee's employment, by failing to comply with the obligations and responsibilities set forth in an employment contract, or by assisting an employer's competitor.

(*Id.*). The court did not reject the instruction as an inaccurate statement of the law, but as unnecessarily duplicative of the breach of contract instruction. (JA3121). But the proposed instruction would have told the jury that the law imposed different and more demanding duties on Krivda than those found in his contract alone. The refusal of the district court to instruct on this claim was clearly prejudicial.

A tort remedy may arise from a contractual relationship where the breaching party owes an independent duty imposed by law. *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 28-79 (N.J. 2002); *see also Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1172 (N.J. 2001) (reinstating summary judgment in favor of former employer on claims for breach of loyalty, misappropriation, tortious interference and unfair competition, even though appellate court had affirmed summary judgment in favor of former employer on breach of restrictive covenant

claims).    When an independent duty is breached, the breach is extrinsic to the contract.  *See Emerson Radio Corp. v. Orion Sales, Inc.*, No. 95-6455, 2000 U.S. Dist. LEXIS 487, *22 (D.N.J. Jan. 10, 2000).

Krivda owed Givaudan a duty of loyalty and not to act contrary to Givaudan's interests, separate and apart from his Employee Confidentiality Agreement.  *Lamorte Burns*, 770 A.2d at 1168 ("Loyalty from an employee to an employer consists of certain very basic and common sense obligations. An employee must not while employed act contrary to the employer's interest.").

Clearly, the jury could have found that Krivda's eve of departure actions in printing more than 600 confidential formulas as he was leaving for new employment, or his admitted conduct (taking the "win list," the printed formulas list and the confidential Aromadex, JA12405-06, R654:191-92; JA12431, JA12500, R667:2703-04; JA6937-38) were breaches of the duty of loyalty.  And that separate and independent legal claim was not rendered moot by the jury's verdict on the breach of contract claim.  It was error for the district not to instruct on this and the other claims that survived Appellees' motions for directed verdict. (*See* App. Br. 53).

IV.  **APPELLEES CANNOT SAVE THEIR JUDGMENT BY ADVANCING ALTERNATIVE ARGUMENTS THAT WERE EITHER REJECTED BY THE DISTRICT COURT OR NEVER RULED UPON.**

A.  **Appellees' attacks on the district court's *Daubert* ruling regarding Dr. Nilsen are baseless**

The court properly denied Appellees' attempt to preclude Dr. Nilsen's testimony through a *Daubert* motion.  (JA13122-24).   Their argument that Dr. Nilsen's method was "unreliable" and prepared for litigation was rejected by the district court.   "Dr. Nilsen definitely has the scientific background" and his opinions were based on "reliable principles."  (*Id.*)  That ruling may be reversed only if it is an abuse of discretion. *See United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004) (applying abuse-of-discretion standard, rejecting heightened scrutiny for *Daubert* decisions as to admissibility of "technical-knowledge" expert on fingerprint analysis and identification, which is not "scientific" expertise).   It was not.

Dr. Nilsen based his method of comparing formulas on his experience in the industry.   His method "flowed naturally" from his line of "technical work" in developing fragrance formulas.  *See Kendall Holdings, Ltd. v. Eden Cryogenics LLC,* No. 2:08-cv-390, 2013 U.S. Dist. LEXIS 136898, *19 (S.D. Ohio Sept. 24, 2013), *citing Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007).

It is no surprise that many of the *Daubert* factors are inapplicable in a case such as this, which involves a highly specialized industry.  Because of their trade secret protections, competitors' formulas are never compared (except, in this

instance, for purposes of litigation) by outside experts; comparisons are not subject to any industry standards; and formulas (including any comparisons) are most certainly not published in studies or subject to peer review. *See Durkin v. Wabash Nat'l,* No. 10-2013, 2013 U.S. Dist. LEXIS 44467, *33-34 (D.N.J. Mar. 28, 2013).

Regardless, the district court did not need to find that Dr. Nilsen's methodology was correct in order to be admissible. *McGonigal v. Sears Roebuck & Co.,* No. 07-CV-4115, 2009 U.S. Dist. LEXIS 20656, *18 (E.D. Pa. Mar. 13, 2009), *citing Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000). The district court appropriately found that Dr. Nilsen had the proper training, education, experience and expertise to compare two fragrance formulas.

### B.    Mane's attack on Gering's testimony is another example of Appellees' appellate strategy to focus on extraneous facts, and not the issues on appeal

Mane makes a similar *Daubert* argument regarding Givaudan's damages expert, Gering. (Mane Br. 66). The district court denied that motion at trial when it was first made, (JA12396), and when it was renewed. (R665:2323, 2442). There is no reason for this Court to second guess those decisions.

Mane also raises allegations that Gering had submitted false credentials in support of his opinions. (Mane Br. 30, 66). But there is no claim that Givaudan had even an inkling of this issue at trial; it was first raised in a letter submitted to the district court after this appeal had been perfected. (JA6845). Givaudan promptly responded, advising the court that it had no prior knowledge of any issues with Gering's credentials. (JA6859). The district court never took any

action on the allegations.  In the context of this appeal, the question of Gering's credentials is simply another example of the efforts of Appellees to divert the discussion from the central issues before the Court.

### C.    Trade secret status has not been waived

Mane's final argument is that Givaudan waived its trade secret claim by filing certain documents on the publically accessible ECF docket.  (Mane Br. 66).  These very documents were introduced at trial in open court, and neither Mane nor Krivda made any motion to the district court asserting that by doing so, Givaudan waived anything.  Moreover, Givaudan properly sought and obtained an order from this Court continuing the impoundment of those portions of the certified record filed under seal in the district court.    (3rd Cir. Case 14-1590 Document: 003111582510; 003111614270).    And neither case cited by Mane supports its argument.  *See Nova Chem., Inc v. Sekisui Plastics Co., Ltd.*, 579 F.3d 319, 326, 328 (3rd Cir. 2009) (holding licensor's intellectual property rights were not extended beyond expired license agreement); *Newark Morning Ledger Co. v. New Jersey Sports & Exposition Authority*, 31 A.3d 623, 641 (N.J. Ct. App. Div. 2011) (holding that financial terms in contracts were not trade secrets exempt from disclosure under state open records act).

## CONCLUSION

The trial court committed error in its partial summary judgment ruling, and its ruling at the start of trial that the print list could not be admitted. The prejudice from those rulings is manifest. In addition, the court improperly allowed Krivda to testify as an undisclosed expert, and refused to instruct the jury on legal claims that had a basis in the record and different legal elements than the claims that were submitted. These errors cannot be brushed aside, nor do they become harmless based on Appellees' unfounded arguments that there are alternative grounds to support the judgment below. A new trial is required to correct these errors, and to allow a full and fair trial on Givaudan's claims.

Respectfully submitted,

By: _____ /s/ Eric Magnuson _____
Eric Magnuson

Eric Magnuson
Robins Kaplan LLP
2800 LaSalle Plaza
Minneapolis, Minnesota 55402
Telephone: 612-349-8500

Elliot H. Scherker
Greenberg Traurig, P.A.
Wells Fargo Center, Suite 4400
333 Southeast Second Avenue
Miami, Florida 33131
Telephone: 305-579-0500

David Leichtman
Robins Kaplan LLP
601 Lexington Avenue
New York, New York 10022
Telephone: 212-980-7400

Wendy Johnson Lario
Greenberg Traurig, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: 973-360-7900

*Counsel for Givaudan Fragrances Corporation*

## CERTIFICATION OF ADMISSION TO BAR

I, Eric J. Magnuson, certify as follows:

 1. I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

 2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

/s/ Eric J. Magnuson

Eric J. Magnuson

75609538.5

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF
APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 6736 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2008 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection,  version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

/s/  Eric J. Magnuson
Eric J. Magnuson

<u>CERTIFICATE OF FILING AND SERVICE</u>

I, Robyn Cocho, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

June 4, 2015 the foregoing Reply Brief on Behalf of Plaintiff-Appellant Givaudan

Fragrances Corporation was filed through the CM/ECF system and served

electronically on the individual listed below:

John D. Shea                          Thad M. Barnes
Litchfield Cavo LLP                   Stites & Harbison, PLLC
1800 Chapel Avenue West               400 West Market Street, Suite 1800
Cherry Hill, New Jersey 08002         Louisville, Kentucky 40202-3352

The required copies will be forwarded to the court.

<u>/s/ Robyn Cocho</u>
Robyn Cocho